WILBUR W. HART *et al.*, Plaintiffs and Counterdefendants-Appellants, *v.* ROBERT E. LYONS *et al.*, Defendants and Counterplaintiffs-Appellees.

Second District    No. 81-808

Opinion filed June 2, 1982.

Terry P. Eland, of Glendale Heights, for appellants.

Wayne L. Mular, of Bloomingdale, for appellees.

JUSTICE REINHARD delivered the opinion of the court:
Plaintiffs, Wilbur W. Hart and Pamela J. Hart, sellers, appeal from a

judgment of the circuit court of Du Page County which found against them and in favor of defendants, Robert E. Lyons and Janice E. Lyons, purchasers, on plaintiffs' complaint for breach of contract to sell a residential home. The order appealed from also found in favor of defendants on a counterclaim to recover their earnest money and awarded defendants judgment against the plaintiffs in the amount of $5,000 plus interest and costs.

Plaintiffs raise the following issues for our review: (1) whether the trial court erred in finding plaintiffs breached the contract and in determining that the "time is of the essence" clause had not been waived; (2) whether the trial court erred in not allowing cross-examination and testimony regarding the defendants' ability to obtain financing and testimony of title commitment practices; and (3) whether the plaintiffs were entitled to the earnest money as liquidated damages.

There is no significant dispute as to the relevant facts which are as follows. On August 31, 1978, the parties entered into a written agreement using a standard printed residential sales contract whereby defendants agreed to purchase plaintiffs' residence in Bloomingdale, Illinois, for $95,500. No brokers were involved. The amount of earnest money was set at $5,000, and closing was scheduled for February 1, 1979. Among the agreement's terms was a provision that "[t]ime is of the essence of this contract." The contract also provided that plaintiffs were to furnish evidence of merchantable title and a spotted survey prior to the closing date.

On February 1, 1979, the parties mutually agreed in writing that the closing date be changed to April 1, 1979, inasmuch as the home into which plaintiffs planned to move had not been completed and defendants had not sold their home. Just prior to the extended closing date, the parties again mutually agreed, orally, to a further extension of closing to June 1, 1979. Each of these extensions was made at plaintiffs' request. No other terms of the contract were discussed or changed other than the closing date. No further discussion occurred concerning the transaction until June 1, 1979. On the evening of June 1 at about 10 p.m., defendants came to plaintiffs' home and stated that since the closing had not taken place on that date as scheduled, the contract was null and void.

On June 14, 1979, defendants' attorney sent plaintiffs a demand for the return of their earnest money. It was stated in this demand that plaintiffs had breached the contract by failing to provide defendants with a survey of a preliminary title report and by failing to close the transaction. Plaintiffs responded on June 20, 1979, with a "Demand to Close" which noted that no demand had been made on either party with respect to production of a title commitment, a document customarily ordered by the buyers' lending institution. The demand set July 2, 1979, at 5 p.m. for the time of closing and stated that a title commitment would be for-

warded shortly. The title commitment was forwarded on June 28, 1979. No closing took place on July 2, and on July 10, defendants again demanded the return of their earnest money.

Plaintiffs thereafter filed suit for breach of contract and forfeiture of the earnest money. Defendants counterclaimed for restoration of the earnest money and accumulated interest. Following a bench trial, the court found in defendants' favor on the original complaint and on their counterclaim. The trial court found that the extensions of the closing date did not act as a waiver of the "time is of the essence" provision. He further held that the plaintiffs had breached the contract by failing to obtain a title commitment and survey prior to closing as required by the contract. During the trial, the court excluded testimony relative to the buyers' ability to obtain financing and proposed testimony of title commitment custom and practice in the area.

Plaintiffs first contend on appeal that the judgment of the trial court was against the manifest weight of the evidence when it found that the "time is of the essence" provision of the contract had not been waived by the extensions of the closing date. Plaintiffs maintain that this waiver was made manifest by the two extensions of the closing date which were agreed to after the original signing of the contract, and that defendants' failure to inform plaintiffs prior to June 1 that strict compliance with the extended closing date was expected is evidence that the "time is of the essence" provision had not been revived as of that time. Plaintiffs further maintain that their subsequent demand for a closing on July 2 operated to revive this clause so that defendants breached the contract by their refusal to close on that date.

■■ Generally, the parties may make "time is of the essence" a provision of their agreement, and when it distinctly appears that they have done so and no peculiar circumstances have intervened to prevent or excuse a strict compliance, it will be treated by the court as of the essence. (*Fannin v. Devine* (1920), 294 Ill. 597, 605, 128 N.E. 745; *Zempel v. Hughes* (1908), 235 Ill. 424, 431, 85 N.E. 641.) The extent to which a "time is of the essence" provision in a contract will be strictly enforced depends upon the intention of the parties as determined primarily by the language used viewed under the circumstances surrounding the agreement as they reflect on the meaning of the words. (*Cantrell v. Kruck* (1975), 25 Ill. App. 3d 1060, 1064, 324 N.E.2d 260.) Thus, courts have found a waiver of a "time is of the essence" clause where the seller in an installment contract accepts late or lesser payments (*Fox v. Grange* (1913), 261 Ill. 116, 103 N.E. 576; *Kirkpatrick v. Petreikis* (1976), 44 Ill. App. 3d 575, 358 N.E.2d 679; *Barlow v. McDowell* (1905), 118 Ill. App. 506), where the actions of the buyer are not consistent with strict enforcement of the terms (*Kohenn v. Plantation Baking Co.* (1975), 32 Ill. App. 3d 231, 336 N.E.2d 491), or

where a closing date has been extended and there is no meeting of the minds as to a new closing date (*Cantrell v. Kruck* (1975), 25 Ill. App. 3d 1060, 324 N.E.2d 260). Once there is a waiver of the provision, it may be revived only by specific notice of that intention. (*Fox v. Grange; Cantrell v. Kruck.*) It is plaintiffs' contention that the two extensions of the closing date, the inaction of the defendants to notify them to deliver a title commitment and survey, and defendants' failure to tender the purchase money, all are circumstances which operate as a waiver of the "time is of the essence" provision.

While both parties have cited to us cases which generally state the aforesaid principles, we have not found the cases controlling within the factual context of the case before us. We have not found any Illinois authority which holds that the extension of the closing date itself also automatically operates to waive the "time is of the essence" provision. Nor is there anything in the actions of the parties here that indicate such an intention. Both of the agreements to extend the closing date contained no conversation about or change of any other provision of the contract. It is stated in section 722 of Corbin on Contracts: "If the extension is a definite one, fixing a new time limit, it is a question of interpretation of the new expression, whether performance by the new limit is of the essence. It should be held to be so in the absence of anything to indicate the contrary intention, where the waiver is a mere extension of time without consideration." (3A Corbin on Contracts sec. 722, at 380 (1960).) Also, a waiver of a contract provision may be express or implied from acts or conduct. (See *Cantrell v. Kruck* (1975), 25 Ill. App. 3d 1060, 324 N.E.2d 260.) Nevertheless, in the instant case we find neither an express or implied waiver of the provision by the defendants. The mere extension of the closing date, absent some evidence of modification of the "time is of the essence" provision, does not under the circumstances here operate to waive that clause in the contract. To hold otherwise would contravene the express language of this agreement and jeopardize enforcement of contracts fairly entered into in real estate transactions.

■ Plaintiffs have additionally argued that the inaction of the defendants in failing to demand the title commitment and survey and their failure to tender the purchase money on June 1 also constitutes a waiver of the "time is of the essence" provision. We disagree with this contention as well. By express provision in the contract the plaintiffs were to deliver "prior to closing date" evidence of merchantable title and a spotted survey. These conditions of the agreement were not performed by the plaintiffs by the closing date of June 1. Since plaintiffs failed to fulfill these conditions by June 1, the defendants were relieved of any duty to tender payment. "The party who insists upon performance by the other party must show performance on his part, while he who desires to rescind

the contract need only show nonperformance or inability to perform by the other. Inability to perform is sufficient excuse on the part of the purchaser for not tendering performance, for, in this event, a tender would be devoid of meaning." (*Christopher v. West* (1951), 409 Ill. 131, 136, 98 N.E.2d 722.) Where the plaintiffs had the express obligation under the contract to deliver evidence of merchantable title and a spotted survey prior to closing, we can find no precedent which would impose an obligation upon defendants to initiate a "demand" for performance of these express conditions or to require them to tender the purchase money when confronted with the plaintiffs' prior breach of the contract. Under the circumstances present here, defendants did nothing to mislead the plaintiffs, and the plaintiffs' failure to comply with the express terms of the agreement constituted a material breach of the contract.

■ From the foregoing analysis, we also reject plaintiffs' next contention that the trial court erred in disallowing cross-examination and testimony concerning defendants' ability to have sufficient funds to complete the purchase. In view of plaintiffs' breach due to its failure to perform express conditions in the agreement, it therefore became immaterial whether the defendants had sufficient funds in order to tender the purchase price at the time of closing. The failure of plaintiffs to perform excuses tender of the purchase price. See *Christopher v. West* (1951), 409 Ill. 131, 136-37, 98 N.E.2d 722.

The plaintiffs also contend that the trial court erred when it disallowed testimony from their proposed witnesses who would have testified that custom and usage in the area would indicate that the institution providing financing for the purchaser would normally order the title report. Plaintiffs contend that this testimony would have showed "that title is ordered by the lender where a lender is involved and that sellers' responsibility is limited to paying for their portion thereof." The trial court refused to allow this testimony ruling that there was no showing that plaintiffs were aware of any third-party financing. The trial court ruled correctly since there is no evidence in this record to indicate that the plaintiffs considered or relied on this custom and practice in failing to fulfill their express obligation under the contract.

As we have concluded that plaintiffs breached the contract, the trial court correctly found that defendants here were entitled to return of their earnest money, and interest thereon, as specified in the agreement.

Affirmed.

VAN DEUSEN and NASH, JJ., concur.