In the

# United States Court of Appeals

## For the Seventh Circuit

No. 13-3871

HONGBO HAN,

*Plaintiff-Appellant,*

*v.*

UNITED CONTINENTAL HOLDINGS,
INC., et al.,

*Defendants-Appellees.*

Appeal from the United States District Court for the
Northern District of Illinois, Eastern Division.
No. 13-C-2067 — **Joan B. Gottschall**, *Judge.*

ARGUED MAY 28, 2014 — DECIDED AUGUST 11, 2014

Before FLAUM, MANION, and TINDER, *Circuit Judges.*

MANION, *Circuit Judge.* Hongbo Han filed a putative class action against United Continental Holding, Inc., United Air Lines, Inc., and Mileage Plus Holdings LLC (hereinafter "United"), alleging that the defendant breached the terms of its frequent-flyer program, the "MileagePlus Program." Specifically, Han maintained that United breached the MileagePlus Program contract by crediting him for "mileage" determined

by the distance between the airports, instead of the number of miles the airplanes actually flew (including such things as weather diversions and landing delays). The district court dismissed Han's complaint with prejudice and he now appeals. We affirm.

## I.

United's MileagePlus Program is a voluntary customer-loyalty program. This Program allows members to earn "mileage" when they fly on United, or its partner airlines, or through other qualifying activities such as car or hotel room rentals. Han filed a putative class action suit against United alleging a breach of the MileagePlus Program. The district court dismissed Han's complaint with prejudice. We review the dismissal *de novo* and take as true all facts alleged in the complaint; we also draw all reasonable inferences from those facts in Han's favor. *Abcarian v. McDonald*, 617 F.3d 931, 933 (7th Cir. 2010). Viewing the facts in this light, dismissal is appropriate if Han fails to "state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

Han asserted only a breach of contract claim under Illinois law. To state a claim for breach of contract under Illinois law, a party must allege "(1) the existence of a valid and enforceable contract; (2) substantial performance by the plaintiff; (3) a breach by the defendant; and (4) the resultant damages." *Reger Dev., LLC v. Nat'l City Bank*, 592 F.3d 759, 764 (7th Cir. 2010). Han alleged that the MileagePlus Program required United to credit him for the total miles the airplane actually flew, and that United breached its contract by instead crediting him

based on the mileage between the airports. Contract construction is a legal issue which is reviewed *de novo*. *See Yockey v. Horn*, 880 F.2d 945, 949 (7th Cir. 1989) (citing *Morris v. Flores*, 528 N.E.2d 1013, 1015 (Ill. App. Ct. 1988)).

## II.

Members of United's MileagePlus voluntary customer-loyalty program earn "mileage" when, among other things, they fly on United, or its partner airlines. Members can then use these "mileage" credits to purchase United flights, as well as other goods or services. Additionally, customers who fly often can qualify for various levels of "Premier" status, which provides the members with increasing tiers of benefits.

To enroll in the Program, members must complete a MileagePlus enrollment form and must accept the MileagePlus Program Rules, Terms, Conditions, and Legal Notices. The Mileage Plus Program Rules begin by stating: "[t]he following provisions form the basis of the MileagePlus Program."[1] The Program Rules then stated that "[y]our participation in the Program will be governed by these provisions," and that "[t]hese Program Rules cannot be superseded or changed, except in writing from United Airlines." The Program Rules also state that "Participation in the MileagePlus Program (the "Program") is subject to any terms and conditions, rules, regulations, and policies and procedures ("Program Rules")

---

[1] The plaintiff attached the MileagePlus contract in response to the motion to dismiss. Because the terms of the MileagePlus contract are central to Han's complaint, we may consider them in ruling on a motion to dismiss. *See Rosenblum v. Travelbyus.com, Ltd.*, 299 F.3d 657, 661 (7th Cir. 2002).

that United may, at its discretion, adopt from time to time." The Program Rules then provide that "United shall attempt to advise active members of various matters of interest through such means as may be appropriate, such as account summaries, emails, newsletters and its website … ." The Program Rules further provide that "United has the sole right to interpret and apply the Program Rules."

Relevant to the question of miles awarded for air travel, Section 18a of the Rules states that "[i]n the case of air travel, mileage will be credited only for flights actually flown by the member." The district court held, and we agree, that this language unambiguously clarifies that mileage credit will be awarded only for flights flown, as opposed to reserved or ticketed flights on which an individual does not travel. Han does not challenge that conclusion on appeal; rather, he argues that "mileage," as used in the Program Rules, is ambiguous.

United acknowledges that the MileagePlus Program Rules do not specify the method by which United will determine the amount of "mileage" credit for any particular flight. Appellee Br. 14 ("the Rules are silent as to the method by which United calculates the size of the award corresponding to each flight"). But United argues that this silence defeats Han's claim because "a court may not 'add new terms or conditions to which the parties do not appear to have assented [or] write into the contract something which the parties have omitted.'" Appellee Br. 14 (quoting *Gallagher v. Lenart*, 854 N.E.2d 800, 807 (Ill. App. Ct. 2006)).

We disagree with United's reasoning. While a court cannot add terms to a contract, "[s]ilence creates ambiguity … only

when the silence involves a matter naturally within the scope of the contract as written." *Consolidated Bearings Co. v. Ehret-Krohn Corp.*, 913 F.2d 1224, 1233 (7th Cir. 1990). In this case, United agreed in the MileagePlus Program Rules to award customers mileage for flights actually flown, and thus the method for determining the number of miles to be credited a customer is naturally within the scope of the contract as written. Because the Rules are silent on the method United will use to calculate mileage credit, the contract is ambiguous concerning the meaning of mileage.

Han maintains that because United drafted the contract, the ambiguity in the MileagePlus Program Rules must be interpreted in his favor. *See Outboard Marine Corp. v. Liberty Mut. Ins. Co.*, 607 N.E.2d 1204, 1219 (Ill. 1992); *Gassner v. Raynor Mfg. Co.*, 948 N.E.2d 315, 328 (Ill. App. Ct. 2011) ("the risk of ambiguity and lack of clarity is [placed] on the drafting party"). He also argues that language from other sections of United's web page supports his view that "mileage" means the actual miles flown by the airplane, as opposed to the actual distance-in-miles between the airports.[2] For instance, Han cites to the "Premier Status" qualification requirements, listed on United's web page, where United states that "[Premier qualifying miles] are based on the number of paid flight miles traveled and the fare purchased." He also points to a "Promotion Page" contained on United's web page which, according

---

[2] Han quotes the relevant language from the web page in his complaint and thus it is properly considered on review of a motion to dismiss, even though the actual web page printouts were not attached to his complaint. *See Bogie v. Rosenberg*, 705 F.3d 603, 609 (7th Cir. 2013).

to Han's complaint, states that "flight miles" are "determined by the purchased ticket routing."[3] Compl. ¶ 23. Han argues that this language shows that the MileagePlus Program Rules contract is not only ambiguous, but that his reading of the contract is the better one.[4]

Han's argument, though, ignores the plain language of the MileagePlus Program Rules which unequivocally states that "United has the sole right to interpret and apply the Program Rules." Under Illinois law, "a court must give meaning and effect to every part of the contract." *Cress v. Recreation Servs., Inc.*, 795 N.E.2d 817, 852 (Ill. App. Ct. 2003). Additionally, "Illinois will not 'interfere with the rights of two parties to contract with one another if they freely and knowingly enter into the agreement.'" *Hussein v. L.A. Fitness Int'l, L.L.C.*, 987 N.E.2d 460, 465 (Ill. App. Ct. 2013) (quoting *Garrison v. Combined Fitness Centre, Ltd.*, 559 N.E.2d 187, 190 (Ill. App. Ct.

---

[3] The web page appears to have slightly different language. Specifically, "Actual mileage will be determined by the purchased ticket routing, fare class, Premier status, residency and ticket issue date." But the differences do not affect our analysis.

[4] Han also argues that the Premier Status Qualification Requirements and the frequent flyer "Promotion Page" are integrated into, and thus part of, the four corners of the Program Rules contract. But the Mileage Plus Rules provide that: "The most current Program Rules may be found on mileageplus.com and this is the final authority on the Program Rules." Accordingly, the contract terms are limited to those contained in the Program Rules. But whether those provisions are considered part of the contract, or as extrinsic evidence explaining the contract, they do not help Han because United has the discretion to interpret the contract. *See infra* at 6–8 .

1990)). More specifically, we have recognized that under Illinois law, "a contract can vary from the norm by including language which indicates that one of the parties is to have discretion to interpret and apply the contract." *Herzberger v. Standard Ins. Co.*, 205 F.3d 327, 330 (7th Cir. 2000). However, the interpretation must be based on "'grounds which are reasonable and just.'" *Id.* (quoting *Muka v. Estate of Muka*, 517 N.E.2d 673, 677 (Ill. App. Ct. 1987)); *see also Wilson v. Career Educ. Corp.*, 729 F.3d 665, 672 (7th Cir. 2013) (Darrow, district judge, by designation, concurring) ("Here, the Plan gave CEC clear discretion to interpret the termination provision; thus, we must uphold CEC's interpretation unless it is unreasonable. CEC's interpretation is not unreasonable at least for the reasons already discussed.") (applying Illinois law). Accordingly, because the MileagePlus Program Rules gave United discretion to interpret the terms of that contract, to state a breach of contract claim Han must allege an interpretation of that contract that is unreasonable. Merely alleging that the term is ambiguous and pointing to extrinsic evidence which could support his interpretation of the contract is not enough.[5]

---

[5] On appeal, Han also argues that because the MileagePlus Program Rules constitute a contract of adhesion, "the canon of contract interpretation holding that an ambiguity should be construed against the drafter applies with particular force … ." Han forfeited this argument by not presenting it below. *Jackson v. Parker*, 627 F.3d 634, 640 (7th Cir. 2010). But even if Han had not forfeited the argument, the MileagePlus Program Rules unambiguously gave United deference to interpret the contract terms. Han does not argue that this clause, or the contract as a whole, is unconscionable. Accordingly, treating a customer-loyalty program as an adhesion contract would not alter our analysis.

Han, however, does not claim that United's interpretation of the term "mileage," as used in the Program Rules, is unreasonable; rather, he argues that his view is the better one, or at a minimum that the contract is ambiguous. But to avoid dismissal, Han needs to plausibly allege that United's interpretation of the contract is unreasonable. United interprets "mileage" for flights as the total distance-in-miles between the airports. As a matter of law, this interpretation is not unreasonable. Rather, it is entirely reasonable for an airline to use a standard measure of miles for all flights between the same airports. It is quicker, cheaper, easier, and more predictable, and allows customers to readily determine the number of miles they will earn per flight. Conversely, Han's interpretation of "mileage" as the total distance flown to arrive at the destination airport would require an airline to track the exact miles for every flight flown and to credit customers accounts based on that information. While it might be possible for an airline to do that, that does not make United's interpretation of mileage as the actual distance between airports an unreasonable interpretation of the contract. Nor does any of the language from other parts of United's website render its interpretation of "mileage" in the Mileage-Plus Program Rules unreasonable.

Finally, Han requests that this court grant him leave to amend his complaint, but does not propose any allegations that would change the result here. Han never sought leave to amend his complaint while in the district court. We see no basis for remanding to the district court to allow Han to amend the complaint because any amendment would be futile. *See Bausch v. Stryker* Corp., 630 F.3d 546, 562 (7th Cir. 2010) (explaining that a district court may deny leave to file an

amended complaint in the case of "futility of amendment"). As explained above, because United has discretion to interpret the meaning of "mileage" and the interpretation United gave that term is reasonable, Han cannot state a claim for breach of the MileagePlus Program contract. We AFFIRM.